[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-13429
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cr-20757-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KAREN KALLEN-ZURY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 12, 2018)

Before WILLIAM PRYOR, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Karen Kallen-Zury appeals from the district court's summary denial of her second motion for a new trial based on newly discovered evidence.  *See* Fed. R. Crim. P. 33(b)(1).  She argues on appeal that her motion was timely and that her new evidence warranted a new trial.  After careful review, we affirm.

## I.

In 2013 Kallen-Zury was convicted of operating a Medicare fraud and kickback scheme at Hollywood Pavilion ("HP"), a mental-health facility she co-owned and operated.[1]  Briefly stated, Kallen-Zury and HP unlawfully paid recruiters to bring patients to HP to receive psychiatric services that HP could bill to Medicare.  The evidence showed that most of the patients were drug addicts who did not need the psychiatric services offered at HP.  We affirmed Kallen-Zury's convictions and sentence on direct appeal.  *United States v. Kallen-Zury (Kallen-Zury I)*, 629 F. App'x 894 (11th Cir. 2015).

In 2016 Kallen-Zury filed a first motion for a new trial based on newly discovered evidence.  Some of that evidence—testimony from the trial of another HP employee—partly contradicted the trial testimony of a patient recruiter named Gloria Himmons, who stated that she was directed by an HP employee (not Kallen-

---

[1] More precisely, Kallen-Zury was convicted of one count of conspiracy to commit healthcare fraud and wire fraud, in violation of 18 U.S.C. § 1349; five counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; two counts of healthcare fraud, in violation of 18 U.S.C. §§ 1347 and 2; one count of conspiracy to defraud the United States and to pay and receive kickbacks in connection with a federal healthcare-benefit program, in violation of 18 U.S.C. § 371; and five counts of payment of kickbacks in connection with a federal healthcare-benefit program, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A).

Zury) to file false reports of her activities for HP. The district court denied Kallen-Zury's motion, and we affirmed. *United States v. Kallen-Zury (Kallen-Zury II)*, 710 F. App'x 365 (11th Cir. 2017). In relevant part, we concluded that the evidence relating to Himmons did not warrant a new trial because Himmons's testimony was largely cumulative of the testimony from other patient recruiters and because the government produced other evidence to corroborate these accounts. *See id.* at 372–73.

In 2017, over three years after the date of the jury verdict, Kallen-Zury filed a second motion for a new trial based on newly discovered evidence. This time, she relied on evidence from trial in the case of *United States v. McCardell*, No. 5:16-cr-212, from the Western District of Louisiana. *McCardell* involved a similar Medicare kickback scheme at Physician's Behavioral Hospital ("PBH") in Shreveport, Louisiana. Himmons testified at the *McCardell* trial that she recruited patients for PBH during the same period of time that she was recruiting patients for HP. In addition, according to Kallen-Zury, Himmons referred many of the same patients to both PBH and HP, and PBH admitted these patients for inpatient psychiatric services. Kallen-Zury argued that the *McCardell* evidence impeached Himmons's credibility and refuted evidence that patients were fraudulently diagnosed at HP.

3

The district court summarily denied Kallen-Zury's motion for the reasons stated in the government's response.  These reasons included that the motion was untimely since it was filed more than three years after the jury verdict, and that it did not meet the requirements for a new trial under Rule 33(b)(1) since it relied on evidence that was cumulative, impeaching, and did not undermine confidence in the integrity of the verdict.  Kallen-Zury now appeals.

## II.

We review the denial of a motion for a new trial for an abuse of discretion. *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (*en banc*).  We likewise review for an abuse of discretion a district court's decision to not hold an evidentiary hearing.  *United States v. Slocum*, 708 F.2d 587, 600 (11th Cir. 1983). Abuse-of-discretion review is deferential: we will affirm unless the district court made a clear error of judgment or applied the wrong legal standard.  *United States v. Lyons*, 403 F.3d 1248, 1255 (11th Cir. 2005).

## III.

A defendant may move within three years of the verdict for a new trial on the basis of newly discovered evidence.  Fed. R. Crim. P. 33(b)(1).  "Motions for a new trial based on newly discovered evidence are highly disfavored in the Eleventh Circuit and should be granted only with great caution."  *Campa*, 459 F.3d

4

at 1151 (quotation marks omitted).  The defendant bears the burden of justifying the need for a new trial.  *Id.*

To obtain a new trial based on newly discovered evidence, the defendant must establish that (1) the evidence was discovered after trial; (2) the failure to discover the evidence was not due to a lack of due diligence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material to issues before the court; and (5) the evidence is of such a nature that a new trial would probably produce a different result.  *United States v. Barsoum*, 763 F.3d 1321, 1341 (11th Cir. 2014).  The failure to satisfy any one of these requirements is fatal to a motion for new trial.  *United States v. Taohim*, 817 F.3d 1215, 1223 (11th Cir. 2013).  Newly discovered evidence need not relate directly to the issue of guilt or innocence to justify a new trial, but it must "afford reasonable grounds to question . . . the integrity of the verdict."  *United States v. Scrushy*, 721 F.3d 1288, 1304 (11th Cir. 2013) (quotation marks omitted).

Here, the district court did not abuse its discretion in denying Kallen-Zury's motion for a new trial based on newly discovered evidence.  *See Campa*, 459 F.3d at 1151.  To begin with, the court's summary denial order is sufficient to permit meaningful review.  The court said it was denying the motion for the reasons stated by the government in its response to her motion.  And the record is otherwise complete enough to provide an adequate basis for our review.  *See Hall v. Holder*,

5

117 F.3d 1222, 1226 (11th Cir. 1997) (remand is unnecessary where the record is complete and "provides an adequate basis" for our review of the merits of the case). Likewise, no evidentiary hearing was necessary because "the record contained all the evidence needed to dispose of each of the grounds asserted as a basis for a new trial." *Scrushy*, 721 F.3d at 1305 n.30.

Turning to the grounds asserted in the motion, Kallen-Zury contends that the *McCardell* evidence warrants a new trial for two reasons. First, she says, it severely undercuts Himmons's credibility because it shows that Himmons was committing other crimes at the time she recruited patients for HP and that she lied about these facts to the government and the court. Second, Kallen-Zury contends, it contradicts evidence at her trial that most of the patients referred to HP did not need psychiatric services. Neither ground warrants a new trial.

While the *McCardell* evidence shows that Himmons committed additional crimes in referring patients to PBH, this evidence is merely cumulative and impeaching. As such, "it is not the type of evidence that warrants a new trial." *See Taohim*, 817 F.3d at 1223. More significantly, Kallen-Zury fails to explain how this evidence would have resulted in a different result in light of the "strong" evidence of Kallen-Zury's guilt. *See Kallen-Zury II*, 710 Fed. App'x at 372–73; *Kallen-Zury I*, 629 F. App'x at 906. As we said in affirming the denial of her first motion, Himmons's testimony was "largely cumulative" of testimony from the

6

other patient recruiters, and the government produced evidence to corroborate the consistent accounts of the patient recruiters. *See Kallen-Zury II*, 710 F. App'x at 372–73. The *McCardell* evidence has no direct bearing on this other evidence. Accordingly, the *McCardell* evidence relating to Himmons's credibility, even considered in conjunction with the evidence from Kallen-Zury's first motion for a new trial, is not of such a nature that a new trial would probably produce a different result. *See Barsoum*, 763 F.3d at 1341.

The district court likewise reasonably concluded that any patient overlap among PBH and HP did not undermine confidence in the verdict. According to Kallen-Zury, the *McCardell* evidence establishes that (a) Himmons recruited many of the same patients for both PBH and HP, and (b) the patients Himmons recruited for PBH needed psychiatric treatment.[2] From these two assertions, Kallen-Zury draws the inference that many of the patients Himmons recruited for HP likewise needed psychiatric treatment, contradicting evidence at her trial that "[m]ost of the patients were drug addicts who did not need the psychiatric services offered at HP." *Kallen-Zury I*, 629 F. App'x at 897.

---

[2] We note that, with regard to her assertion of patient overlap, Kallen-Zury's brief fails to cite with any specificity the "parts of the record on which [she] relies," in violation of Fed. R. App. P. 28(a)(8)(A). Instead, she simply invites this Court, as she did the district court, to compare an exhibit from the *McCardell* trial with HP's patient census, which, the government notes, is more than 3,000 pages. Neither this Court nor the district court, however, should be expected to do a litigant's work for her. *See Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011). In any case, while the failure to comply with Rule 28 "may result in waiver or abandonment of issues on appeal," we exercise our discretion to consider this issue. *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1286 n.4 (11th Cir. 2003).

Even assuming that there was some patient overlap among PBH and HP, however, the *McCardell* evidence does not establish that the overlapping patients admitted by PBH needed psychiatric treatment covered by Medicare, much less that these same patients needed psychiatric treatment when they were admitted to HP at different times.  According to the *McCardell* trial transcript, PBH patients were admitted based on a PBH doctor's determination of whether second-hand reports of psychiatric symptoms fit admissions criteria.  But that is as far as the *McCardell* evidence goes regarding the patients' need for psychiatric treatment. And, in fact, both the Director of Social Services and the Director of Nursing for PBH, who actually spoke with PBH patients before admission, testified that they were concerned that the patients recruited by Himmons may have been faking or exaggerating their symptoms.  So the *McCardell* evidence is not inconsistent with the testimony from Kallen-Zury's trial.  *See Kallen-Zury II*, 710 F. App'x at 367 ("[T]he conspirators often falsified the patients' records to reflect serious psychiatric problems or told the patients to claim psychiatric issues upon admission.").  And it certainly was within the district court's discretion to conclude that this tenuously connected new evidence was not of such a nature that a new trial would probably produce a different result.  *See Barsoum*, 763 F.3d at 1341.

Because we conclude that the district court did not abuse its discretion by denying Kallen-Zury's second motion for a new trial on the merits, we need not

and do not address whether the motion was timely either because it related back to her first motion or because she could establish equitable tolling. *See Eberhart v. United States*, 546 U.S. 12, 19 (2005) (holding that the time limit to file a Rule 33 motion, though "admittedly inflexible," is a non-jurisdictional claims processing rule). Accordingly, we affirm the denial of her second motion for a new trial based on newly discovered evidence.

**AFFIRMED.**